Estate of George H. Taber, Deceased, George Hathaway Taber, Jr., and The Union Trust Company of Pittsburgh, Executors v. Commissioner.
Estate of Taber v. Commissioner
Docket No. 112239.
United States Tax Court
1944 Tax Ct. Memo LEXIS 366; 3 T.C.M. (CCH) 151; T.C.M. (RIA) 44048; February 23, 1944
*366 W. A. Seifert, Esq., 747 Union Tr. Bldg., Pittsburgh, Pa., and Paul E. Hutchinson, Esq., for the petitioners. R. H. Transue, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: The petitioner seeks a redetermination of a deficiency in income tax for 1939 in the amount of $2,868. The petition alleges that the "Respondent erroneously increased capital gain on sale of 604 shares of Gulf Oil Corporation capital stock from $673.46 as reported, to $15,296.28, whereas he should have computed a loss of $144.04." [The Facts] The facts have all been stipulated. Petitioner is the Estate of George H. Taber, Deceased, the executors of which are George Hathaway Taber, Jr., and The Union Trust Company of Pittsburgh, Pa. George H. Taber died December 10, 1940, a resident of Pittsburgh, Allegheny County, Pa. The income tax return filed by the decedent for 1939 was filed with the collector for the twenty-third district of Pennsylvania, at Pittsburgh. On October 4, 1922, the decedent received 32,880 shares of Gulf Oil Corporation stock in a nontaxable reorganization of that company which had a cost basis of $584,092.15. These shares are herein referred to as Lot #1. On August *367 21, 1922, the decedent purchased five shares of Gulf Oil Corporation stock for $125, herein referred to as Lot #2, and on June 20, 1923, 1,500 shares for $94,112.50, herein referred to as Lot #3. On December 21 and 22, 1927, the decedent sold 6,000 shares which had a cost basis of $210,735.80. Of these 5,800 shares came from Lot #1. (cost basis $198,147.47), and 200 shares from Lot #3 (cost basis $12,548.33), as per a revenue agent's report dated November 30, 1938, and accepted as correct by the decedent in the determination of decedent's tax liabilities for 1936 and 1937. On December 10, 1928, the decedent purchased 1,017 shares of Gulf Oil Corporation stock for $77,487.10, herein referred to as Lot #4. On December 30, 1935, the decedent transferred to trusts 23,450 shares having a cost basis of $334,175.22, all of which came from Lot #1. On March 5, 1936, the decedent sold 3,000 shares with a cost basis of $42,751.62 as determined by the respondent and accepted as correct by the decedent. As of December 21, 1936, the decedent was the owner in his own name of a total of 2,952 shares of Gulf Oil Corporation stock and on that date he became entitled to receive and did receive an *368 additional 2,952 shares by way of a 100 per cent stock dividend. There were issued to him in payment of the stock dividend 29 certificates consecutively numbered P 9132 to P 9160, inclusive, each for 100 shares, and one certificate numbered PO 11932 for 52 shares. The following is a list of the shares of Gulf Oil Corporation owned by decedent on December 21, 1936, the date of the 100 per cent stock dividend, showing in columns 2, 3, and 4 the number of shares represented by each separate certificate, and the date thereof. Said list is divided into four blocks or lots and a cost per share is assigned to each lot to conform to the revenue agent's report of January 16, 1942: (1)
(2)
(3)
(4)
(5)
Classification
Cost Assigned
per R.A.R.
Shares
Certificate
Certificate
per R.A.R.
1/16/42
Owned
Number
Date
1/16/42
Lot #1
92
A-534
10/ 3/22
at 14.25054
Lot #1
12
A-2878
2/ 5/23
at 14.25054
Lot #1
52
A-3277
3/ 1/23
at 14.25054
Lot #1
32
A-5343
2/28/24
at 14.25054
Lot #1
97
A-6955
2/24/25
at 14.25054
Lot #1
90
A-9534
2/17/26
at 14.25054
Lot #1
55
A-12095
2/18/27
at 14.25054
Lot #1
100
C-18220
2/18/27
at 14.25054
Lot #1
100
C-18221
2/18/27
at 14.25054
Lot #1
1,000
M-542
12/23/27
at 14.25054
1,630
*369 There are included in the 1,630 shares shown as comprising Lot #1 (revenue agent's report of January 16, 1942) 630 shares which were acquired by decedent at the time of, and as a result of, the reorganization of Gulf Oil Corporation in the year 1922, whereby 12 new shares were issued in exchange for each old share. The cost basis of such shares, as at the date of reorganization, was $14.25054 per share. On July 20, 1939, decedent sold 604 shares of the capital stock of Gulf Oil Corporation for the sum of $19,621.44, making delivery against said sale of the following certificates: P 9147
100 shares
P 9152
100 shares
P 9153
100 shares
P 9154
100 shares
P 9155
100 shares
P 9156
100 shares
A 6
4 shares
604 shares Certificate A 6 was an original certificate from Lot #2, the cost of the four shares represented thereby being $50. The remaining certificates representing 600 shares of Gulf Oil Corporation stock were a part of the certificates received by decedent as a stock dividend. In making return of said sale in his income tax return for 1939, decedent reported as follows: Date
Date
Gross
Cost or
Stock Sold
Acquired
Sold
Sales Price
Other Basis
Gain
Gulf Oil Corporation
6/20/23
7/29/39
$19,621.44
$18,847.98
$673.46
Profit based on above figures is understated in the sum of $100.
*370 Decedent's income tax return for 1939 was audited by the respondent in 1942. The cost basis and identity of the shares of Gulf Oil Corporation stock owned by the decedent at the beginning of 1939 was determined to be as follows: Cost
Cost per
Shares
Basis
Share
Lot #1
1,630
$23,228.38
$14,2505
Lot #2
5
125.00
25.00
Lot #3
300
18,822.51
62.7417
Lot #4
1,017
77,487.10
76.1918
2,952
$119,662.99
After the 100 per cent stock dividend, December 21, 1936, decedent owned shares as follows: Cost
Cost per
Shares
Basis
Share
Lot #1
3,260
$23,228.38
$ 7.1252
Lot #2
10
125.00
12.50
Lot #3
600
18,822.51
31.37085
Lot #4
2,034
77,487.10
38.0959
5,904
$119,662.99
In making such determination the respondent held that the dividend shares could not be identified as having been distributed in respect of any particular lot of the original shares; that the sale in 1939 was made from stock distributed in respect of the earliest purchases made, and that the sale resulted in profit as follows: Sale price of 604 shares
$19,621.44
Cost of 600 dividend shares
at 7.12526 per share
$4,275.16
Cost of 4 shares original
stock at 12.50 per share
50.00
4,325.16
Profit (long-term capital
gain)
$15,296.28
*371 The question presented by this proceeding is the cost basis to the decedent of the 604 shares sold by him on July 20, 1939. The respondent contends that the shares sold cannot be identified as coming from any particular lot purchased except with respect to the four shares represented by certificate A 6. He admits that those four shares can be identified as having come from Lot #2 and that the cost basis thereof is $12.50 per share, or a total of $50. He contends that with regard to the 600 shares sold they cannot be identified as having come from any particular lot. He therefore invokes the rule of his regulations which would ascribe those shares as having been sold from Lot #1, the cost of which is $7,12526 per share. In other words he invokes the "first-in, first-out" rule of his regulations. Section 19.113 (a) (19)-1 and section 19.113 (a) (12)-1 of Regulations 103. In support of his determination he cites ; affd. (C.C.A., 10th Cir.), ; certiorari denied . The petitioner makes three contentions: (1) that the dividend shares sold were identified *372 as distributed in respect of a block of old stock purchased June 20, 1923 (Lot #3) for a known price and that their cost is established accordingly; (2) if the first-in, first-out rule is found applicable its proper application shows that sale in question to have resulted in a loss; (3) that should it be held that the identification claimed by petitioner is inadequate the average cost method is applicable. With regard to the first contention it is the petitioner's position that since the decedent showed in his income tax return for 1939 that the shares sold came from the lot of shares purchased on June 20, 1923, that is sufficient identification. We do not think that it is. To grant this contention would in effect deny to the respondent the right to question the correctness of the decedent's return for 1939. We think he clearly has that right. It is impossible to identify 600 of the shares sold as having come from any particular lot. The second contention of the petitioner is stated in the brief as follows: The apparent meaning of the above Regulations is that shares of stock received by way of stock dividend which cannot be identified with respect to any particular block of old *373 stock held, should be presumed to have been distributed on the first-in, first-out, basis. That is to say, if the old stock had been acquired on three separate occasions then, following declaration of a stock dividend, the lowest numbered stock dividend shares should be allocated to the old stock first purchased. Thus, the lowest numbered new certificate would be assigned to the stock first purchased, and the other certificates assigned according to their numerical sequence. Adopting this method of allocation and assigning the lowest numbered certificates to the earliest purchases of the old stock, and using for this purpose the lot classification contained in the Revenue Agent's report of January 16, 1942, (Stipulation Exhibit "3"), it appears that the decedent sold one hundred shares from Lot No. 1, five hundred shares from Lot No. 4, and four original shares from Lot No. 2, and that the cost of the stock sold by him was as follows: Shares
Cost Per Share
Total Cost
100
$ 7.1252
$ 712.53
500
38.0959
19,002.95
4
12.50  50.00
604
$19,765.48
The net result would be a loss on the transaction in the sum of $144.04. We are of the opinion that there is no *374 merit in this contention. We do not think it can be assumed that there is any correlation between the stock certificate numbers received as dividend stock with the numbers of the original certificates upon which the stock dividend was paid. The third contention of the petitioner is that the average cost of the petitioner's 5,904 shares owned after the payment of the stock dividend is the correct basis for the determination of gain upon the sale of the 604 shares. This is the rule which has been applied in a case where on a nontaxable reorganization a stockholder receives for his old shares shares of stock of the reorganized corporation. . The rule has also been applied in the case of a recapitalization of a corporation. . We do not think that the rule of the above cited cases applies in the case at bar. So far as appears from the stipulated facts the decedent did not surrender his certificates for 2,952 shares and receive in exchange therefor new certificates for 5,904 shares. He simply received certificates for the dividend *375 shares. What happened was merely a proliferation of the petitioner's old shares. The cost of the old shares was reduced one-half. The respondent has admitted that the four shares sold by the decedent represented by certificate A 6 came from Lot #2. He has applied the "first-in, first-out" rule only to the 600 shares. This is in accordance with the Commissioner's regulations and is supported by The "first-in, first-out" rule has been applied in numerous cases. ; . We think that under the rule the respondent had the right to consider the 600 shares as having come from Lot #1, the cost basis of which was $7.12526 per share. Decision will be entered for the respondent.